874     Harvey v. State ex rel. Knox.    [Sup. Ct.

Syllabus.       [149 Miss.

Harvey v. State ex rel. Knox, Attorney-General.*

(Division B. March 19, 1928.)

[116 So. 98. No. 26926.]

1. Evidence Held to Show Violation of Anti-trust Laws.
   The facts in evidence examined in this case and *held* sufficient
   to show a violation of the *anti*-trust laws of the state. Heming-
   way's 1927 Code, section 3479 (chapter 182, Laws of 1926, section
   1).

2. Monopolies. *In state's suit on attorney-general's relation to en-
   force anti-trust laws, injunction may be granted only on final
   hearing (Hemingway's Code 1927, section 3479).*
   Under section 3479, Hemingway's 1927 Code (chapter 182, Laws of
   1926), providing "and may be enjoined by a final decree of the
   chancery court, in a suit by the state on the relation of the at-
   torney-general, from the further prosecution of or doing of the
   acts constituting the trust and combine as defined in this act,"
   a preliminary injunction in a suit by the attorney-general is
   not authorized, even though evidence may be offered in support
   of the bill. Such injunction can only be granted at the suit of
   the state on final hearing.

*Corpus Juris-Cyc. References: Monopolies, 41CJ, p. 203, n. 92.

Appeal from chancery court of Yalobusha county, Sec-
ond district.

Hon. N. R. Sledge, Chancellor.

Suit by the state, on the relation of Rush H. Knox, at-
torney-general, against W. H. Harvey, for an injunction
against the violation of *anti*-trust laws. From a tempo-
rary injunction, defendant appeals. Affirmed in part.
Reversed in part and remanded.

*Creekmore & Creekmore,* for appellant.

The court below should have sustained motion of appel-
lant to decline to hear cause, for chapter 182, Laws of

1926, expressly provides that a defendant cannot be enjoined in such a case except on a final hearing. Sec. 3479, Hemingway's Code 1927. We think it clear that this section prohibits the granting of a temporary injunction. The legislature evidently intended that a person should not be harassed by a proceeding for a temporary injunction brought by the state where such person would have no recourse if he won the case. There is no way to force the state to make a bond for damages and attorney's fees as may be incurred by reason of the wrongful suing out of the injunction. Therefore the law provides that the injunction shall issue only after a hearing on the merits and by final decree. Were this court to hold otherwise much injustice might be done, the business of a person might be absolutely ruined by a temporary injunction and when the case came to trial on the merits the defendant, even though he were successful, would have no way to collect damages or attorney's fee. We think the chancellor had absolutely no power or authority to grant a temporary injunction but that he should have declined to hear the application and ordered the case to be heard at the next regular term of the chancery court. We earnestly submit that the case should be reversed for this error.

Neither the allegations of the bill nor the proof thereunder are sufficient to show a violation of the *anti*-trust law. In 1926 our legislature made some important changes of the *anti*-trust law and in effect modernized it. It is, of course, immaterial whether a man sells goods below the price of production or not, and it is likewise true that only those contracts, agreements or combinations that are inimical to the public welfare are void. And a partial restraint of trade may be valid if reasonable. The rule of reason was announced in the case of *Brown* v. *Staple Cotton Co-operative Association*, 132 Miss. 859, 96 So. 849. The case holds further that there must be an undue and unreasonable restraint of trade

before a contract will be declared violative of the *anti-*trust law. We think under the facts as alleged in the bill and also under the proof, it is shown that the defendant's actions were really beneficial to the public rather than hurtful and it is not alleged that his actions are hurtful to the public, but the bill says that if his actions are continued that harm will result to the public. It is too remote a thing to say that because a person sells a commodity at a price regarded as cheap, that he will in the future raise his price to an unreasonable one. An injunction should not issue on the possibility or on the mere chance that in the future a person will take some action that would be hurtful to the public. And it should be remembered that the state or any person damaged, can, at any time, bring a suit for an injunction or for damages sustained. *Standard Oil Co.* v. *U. S.*, 221 U. S. 1, 55 L. Ed. 619, makes reason as a standard to be applied to so as to ascertain whether a monopoly is illegal or not. To the same effect is *Whitwell* v. *Continental Tobacco Co.*, 125 Fed. 454, 64 L. R. A. 689. The case also holds that the owner of goods may dictate the price at which he will sell them. *Jackson* v. *Price,* 140 Miss. 249, is squarely in point with the case at bar. This case held two things, first that a trust or combination, although resulting in restraint of trade, is not unlawful unless hostile to public welfare; and second that a contract whereby a seller agrees not to enter into the restaurant business in competition with the purchaser is not unlawful. An attempt to destroy competition by putting down the price of ginning below its actual cost does not violate the *anti-*trust law. *Cotton Oil Co.* v. *State,* 121 Miss. 615, 83 So. 680. The *anti-*trust law does not intend to debar a person from conducting his private business according to his own judgment. *Houch & Co.* v. *Wright,* 77 Miss. 476.

*L. G. Fant* and *R. F. Kimmons,* for appellee.

After a motion by appellant to dismiss the application for a temporary injunction had been overruled by the court, the court heard the proof of the complainant and immediately found the facts to be in keeping with the bill of complaint and granted the temporary injunction. The facts as alleged in the bill of complaint were abundantly proven by the proof of complainant, and denied most positively by the defendant. The chancellor found the facts to be in keeping with the facts set forth in the original bill. The supreme court will not set aside the findings of a chancellor on disputed facts, so it appears that the only controversy possible before the supreme court would be to make it questions of law, as all the facts are found in favor of the appellee by the decision of the chancellor.

The first question argued by appellant is the language of the statute in sec. 1, par. (i), which says, "may be enjoined by a final decree of the chancery court." The argument is made that this language meant that the granting of a temporary injunction is prohibited. There is no authority cited for this construction, and the chancellor below ruled very properly we think, and with the overwhelming weight of authority, that where by a final decree a permanent injunction should be granted, that on a temporary hearing a temporary injunction should be granted; and then if the facts to sustain the temporary injunction were not overthrown at the final hearing they should be made permanent. This is the practice, and there was evidently no intention on the part of the legislature to overthrow this practice of granting a temporary injunction, where on the final hearing it would probably be made permanent. At any rate, in the present case, the hearing before the chancellor on the motion to dissolve was the final hearing, because the bill and answer were before the chancellor and all the proof that could be adduced by either side had already been brought before him, and on this he decided that the facts were in keeping with the original bill, and made his decision

final in regard to the injunction, and granted the writ of injunction, which we consider a complete answer to the point raised by appellant that he could not grant a temporary injunction on account of the language of the statute.

*Creekmore & Creekmore,* in reply for appellant.

It seems too plain to us for argument, that the hearing of a motion to dissolve an injunction is not a final hearing; nor was the decree entered at that time a final decree. The final decree, in this case, could only be entered at a regular term of the chancery court, of the Second division of Yalobusha county, Mississippi. However, since this point is raised by the distinguished counsel, we wish to cite some authorities to maintain our provision. The case of *Maury* v. *Smith,* 46 Miss. 81, held that it is an error for a chancellor on sustaining a motion to dissolve an injunction to dissolve the bill. This case is squarely in point, and the court further held that the cause should be retained until the end of the next term of court. To the same effect is, *Strong* v. *Harrison,* 62 Miss. 61; *Wilson* v. *Pugh,* 61 Miss. 449; *Hunter* v. *Hankinson,* 141 Miss. 279; *Staple Cotton Association* v. *Buckley,* 181 Miss. 483.

Argued orally by *Wade Creekmore* and *H. H. Creekmore,* for appellant, and *Lester G. Fant,* for appellee.

ETHRIDGE, P. J. The state of Mississippi filed its bill of complaint against W. H. Harvey, alleging that the appellant, defendant in the court below, for a long time prior to the filing of this bill, enjoyed a monopoly in the ice business in the city of Water Valley, and that he manufactured and sold the ice at sixty cents per one hundred pounds at the platform, and seventy cents per one hundred pounds delivered. Certain other persons in

Water Valley, desiring to enter the business of selling and delivering ice, made a contract with an ice manufacturer of Oxford, Miss., for shipment of ice to supply their customers at the rate of four dollars per ton, f. o. b. Oxford. The freight charged from Oxford, Miss., to Water Valley, Miss., was one dollar per ton, makig the cost of the ice to the said firm five dollars per ton delivered at Water Valley. It was further alleged that the defendant, Harvey, in order to monopolize the ice trade in the cities of Water Valley and Oxford, Miss., and in order to restrain or attempt to restrain, the freedom of trade or production of ice in the cities of Water Valley and Oxford, Miss., and in order to control the sale of ice and the management and prosecution of the business of the manufacture and sale of ice in the said cities, and to force the price of same to an unreasonable and exorbitant rate, and destroy all competition in regard thereto, and to force the public to pay exorbitant and unreasonable prices for the said ice, to a degree that is inimical to the public welfare, did, on or about the 10th day of June, 1927, by and through his regularly appointed and qualified agents and representatives, attempt to form a trust in restraint of trade or commerce in the commodity of ice in said cities; and, in order to accomplish this purpose, cut the price of ice in Water Valley from seventy cents per one hundred pounds to thirty-five cents per one hundred pounds, and approached a manufacturer of ice in the city of Oxford, Miss., representing that the partnership above referred to were not "worthy of credit; that they had, no standing whatever in the business world, and that, if he sold them ice, he would never get any pay for it; that certain members of the partnership owed large sums to various banks and other creditors, and, if said company attempted to sell ice in competition with him (Harvey) in Water Valley, that he would see to it that the mortgages were foreclosed against them, and the said partnership was placed in bankruptcy."

It was further alleged that the said ice manufacturer at Oxford, Miss., after having been remonstrated with by the said Harvey, and having been cautioned not to ship ice under a penalty that, if he did ship ice to Water Valley to be sold to other persons, he (Harvey) would absolutely ruin his business at Oxford; and that he would see to it, if he shipped ice into Water Valley to interfere with his monopoly with the sale of ice in that city, that he would ship his ice to Oxford, and sell it at thirty cents per one hundred pounds; and that, in pursuance to such threats, the said Harvey, on or about the 29th day of June, 1927, began to ship ice to the city of Oxford, and import trucks and laborers there to sell the same upon the streets at thirty cents per one hundred pounds, which, it is alleged, was exactly one-half of a reasonable price to be paid for ice at that time; that the said acts were done with the intent of making the sale of ice so unprofitable to the people engaged in its manufacture at Oxford that they would be forced out of business, and the said Harvey would monopolize the sale of ice in the city of Water Valley and the surrounding territory; that, in addition to his acts, above set forth, Harvey, by his agents and employees, in order to prevent the sale of ice by the Oxford Ice & Coal Company, an ice manufacturer of Oxford, Miss., gave ice to the customers of such company free, to prevent them from buying the same from his competitor.

It is further alleged that the defendant's acts, complained of, are in violation of the *anti*-trust laws of the state, and that they subject the said Harvey to penalty for the violation of such laws. It is further alleged that the actions of the said Harvey are a continuing cause of complaint on the part of the state of Mississippi for violation of said laws, and that, under the terms of the law in such cases made and provided, the state, on the relation of its attorney-general, by a suit, is entitled to have a final decree enjoining the said Harvey from the

further prosecution of the doing of said acts, and the petitioner, the state, prays that the said Harvey be adjudged guilty of creating a trust and combine in the said cities, and to pay a penalty of two thousand dollars for each offense, the offense of June and July being two separate offenses, amounting to four thousand dollars, and that an injunction issue restraining the said W. H. Harvey from further prosecution of the acts constituting a violation of the said statute, and that a temporary injunction issue at once restraining the said W. H. Harvey from further doing the acts complained of in his bill.

The chancellor refused to issue an injunction, or temporary restraining order upon the sworn allegations of the bill, but caused notice to be given to the defendant to show cause why he should not be restrained from doing such acts, and why an injunction should not be granted restraining him from such acts. Thereupon the defendant, at the time and place fixed, filed a paper alleging that, under the express conditions of the *anti*-trust act, a person can only be enjoined by the state from doing the acts therein denounced after a full hearing, and by a final decree of the chancery court; that, under the law, a final decree could not be entered until the October term, 1927, and moved the court to decline to hear an application for the temporary writ of injunction. The court overruled this contention of the defendant, and answer was filed and proof taken. It is unnecessary to set forth the proof, or the substance thereof, but it is sufficient to say that the proof was sufficient to warrant the chancellor in finding, as a fact, that the acts proven sustained the allegations of the bill.

The chancellor, in a hearing, in vacation, on the 5th day of August, 1927, the same not being a regular term day of the chancery court, directed the issuance of a writ of injunction restraining and enjoining the said Harvey from doing any of the acts in the conduct of his ice business, the effect of which would stifle competition and give

149 Miss.—56.

the. said W. H. Harvey a monopoly in the ice business in the city of Water Valley and the surrounding territory; that, except for the purpose of meeting a legitimate competition in the sale of the ice, the said W. H. Harvey is enjoined from putting his ice for sale, at retail or wholesale, at a price less than the prevailing price for ice at wholesale and retail in communities such at Water Valley and the surrounding territory, for the purpose of restraining trade and creating a monopoly in the manufacture and sale of ice in the city of Water Valley and the surrounding territory, and the said W. H. Harvey is specifically enjoined from doing anything by personal. solicitation, or through agents, by letters, telegrams, or telephone, towards soliciting a monopoly of the ice business in the city of Water Valley by requesting other ice concerns to ship ice or sell ice for shipment to Water Valley; and that the said W. H. Harvey be, and is, spe-. cifically enjoined from doing everything in the city of Oxford, intended to, and the effect of which would be to, prevent legitimate competition in the manufacture and sale of ice in Water Valley, Miss.; and that, except for the purpose of meeting competition in Oxford, he shall be enjoined from selling the ice in the said city and surrounding territory at a price, the effect of which would result in the destruction of legitimate competition in the sale and manufacture of ice in the cities of Water Valley and Oxford, Miss. The clerk of the court was directed to issue a writ of injunction in keeping with the terms of the decree. The defendant excepted to the decree, and prayed for an appeal to the supreme court, with *supersedeas,* to settle the question of law, which appeal was granted for the purpose of settling the questions of law, but without *supersedeas.*

We are of the opinion that the findings of the chancellor on the evidence before him were sufficient to constitute a violation of the *anti*-trust laws (chapter 182, Laws of 1926 [section 3479 *et seq.*, Hemingway's 1927 Code]);

but we are of the opinion that, under section 1, chapter 182, Laws of 1926 (section 3479, Hemingway's 1927 Code), the injunction could not be granted until a final hearing of the cause upon its merits. Section 1, chapter 182, Laws of 1926 (section 3479, Hemingway's 1927 Code), reads as follows:

"Any person, association of persons, corporation, or corporations, domestic or foreign, who shall be a party or belong to a trust and combine shall be guilty of crime and upon conviction thereof shall, for a first offense be fined in any sum not less than one hundred dollars nor more than five thousand dollars and for a second or subsequent offense not less than two hundred dollars nor more than ten thousand dollars, and may be enjoined by a final decree of the chancery court, in a suit by the state on the relation of the attorney-general, from the further prosecution of or doing of the acts constituting the trust and combine as defined in this act."

It will be seen from the reading of this statute that, as a part of the punishment for the violation of the said act, a person so violating it "may be enjoined by a final decree of the chancery court, in a suit by the state on the relation of the attorney-general, from the further prosecution of or doing of the acts constituting the trust and combine as defined by this act." It was evidently the purpose of the legislature to prevent an injunction by the state of the acts complained of until there had been a full hearing and the proof was before the court, so that from all proof the court could determine whether the defendant was really guilty of the acts complained of. A careful comparison of chapter 182, Laws of 1926, with the law preceding its enactment shows that the legislature intended to make radical changes in the law so far as suits by the state are concerned. This legislation was enacted, in the light of litigation recently had by state officers, for violation of the *anti*-trust laws of the state, and the legislature, it must be presumed, found that

public policy would be served by limiting state suits in important and radical particulars. All questions of public policy, and what shall be to the interest and welfare of the public, are for the legislature, and not for the courts, to determine. The right of private persons and corporations to sue for any injury sustained, and to maintain injunctions to prevent such injuries, is not affected by section 1 of the said act, but is expressly preserved by section 3486, Hemingway's 1927 Code, which is as follows:

"Any person, natural or artificial, injured or damaged by a trust and combine as herein defined, or by its effects direct or indirect, may recover all damages of every kind sustained by him or it whether or not inimical to public welfare and in addition a penalty of five hundred dollars, by suit in any court of competent jurisdiction; said suit may be brought against one or more of the parties to the trust or combine and one or more of the officers and representatives of any corporation a party to the same, or one or more of either. And such penalty may be recovered in each instance of injury. All recoveries herein provided for may be sued for in one suit."

We are therefore of the opinion that the court erred in granting a temporary injunction, and its action in so doing is reversed, and the cause remanded for further proceedings in the court below. In view of the acts, above quoted, we conclude that the temporary injunction was unauthorized, and it is unnecessary to now pass upon the question directed to the scope and terms of the decree. When the cause is finally tried, the court will enter such decree as it may find proper in the light of facts then existing, and it will be time enough to pass upon the correctness of such decree when an appeal therefrom is prosecuted.

*Affirmed in part, and reversed in part.*